IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BV JORDANELLE, LLC, an Idaho limited liability company, and BV LENDING, LLC, an Idaho limited liability company, | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Plaintiffs, v. | Case No. 2:14-cv-00351-DN |
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation, | District Judge David Nuffer |
| Defendant. | |

Defendant Old Republic National Title Insurance Company ("Old Republic") filed a motion for judgment on the pleadings (the "Motion").[1] For the reasons set forth below, the Motion is GRANTED, and the Complaint[2] filed by BV Jordanelle, LLC ("BVJ") and BV Lending LLC's ("BVL") (collectively "Plaintiffs"), is DISMISSED with prejudice.

## BACKGROUND

BVJ and BVL allege that in October 2005, Wasatch County Council ("WCC"), acting as the governing authority of Jordanelle Special Service District ("JSSD"), adopted a resolution declaring an intention to finance certain improvements in JSSD; create Jordanelle Special Service Improvement District ("SID"); defray the costs and expenses of the improvements by special assessment to be levied against the properties benefited by the improvements; provide

---

[1] Old Republic National Title Insurance Company's Motion for Judgment on the Pleadings and Memorandum in Support (Motion), docket no. 15, filed January 8, 2015.

[2] Complaint, docket no. 2-1, filed May 7, 2014.

notice of intention to authorize such improvements; and set a time and place for a protest hearing against the improvement or creation of the SID.[3] In February 2006, WCC issued a resolution creating the SID (the "Creation Resolution").[4]

In March 2008, BVL made two loans (the "Loans") to PWJ Holding ("PWJ") for a total of $6,349,206.00, secured by a Deed of Trust (the "Mortgage"). In April 2008, Old Republic issued a Loan Policy of Title Insurance (the "Policy")[5] to BVL insuring the Mortgage for the total amount of the Loans.

In June 2009, WCC recorded a notice of the proposed assessment against the property secured by the Mortgage (the "Insured Property").[6] In July 2009, WCC adopted an ordinance levying an assessment on the Insured Property (the "Ordinance").[7] In August 2009, JSSD adopted and, in September of the same year, recorded a notice of the assessment interest against the Insured Property.[8]

In October 2009, because of PWJ's default on the Loans, BVL foreclosed on the Insured Property.[9] Subsequently BVL transferred the title of the Insured Property to BVJ.[10]

BVJ and BVL allege that they learned about the assessment sometime in January 2010.[11] In September 2010, they submitted to Old Republic a claim to indemnify and defend them

---

[3] *Id.* ¶¶ 9-13, and attached Ex. A.

[4] *Id.* ¶ 14, and attached Ex. A.

[5] *Id.* ¶ 26, and attached Ex. B.

[6] *Id.* ¶ 34.

[7] *Id.* ¶ 35, and attached Ex. C.

[8] *Id.* ¶ 44.

[9] *Id.* ¶¶ 48, 49.

[10] *Id.* ¶ 52.

[11] *Id.* ¶ 43.

against the assessment.[12] Old Republic declined to indemnify them and stated that the risk claimed occurred after the Policy was issued and thus is not covered by the Policy.[13]

BVJ and BVL brought suit against Old Republic on May 7, 2014, alleging that Old Republic breached the insurance contract by denying them indemnity under the Policy, failing to defend them against claims related to the Insured Property, and violating the implied covenant of good faith and fair dealing.

Old Republic's motion for judgment on the pleadings argues that the complaint is not supported by factual allegations. Old Republic argues that the Policy is unambiguous; does not include the risk claimed by Plaintiffs, but expressly excepts the risk even if the Policy is read to cover the risk;[14] and does not obligate Old Republic to defend BVJ and BVL against risks not provided for in the Policy.

BVJ and BVL respond[15] that the alleged risk is covered by and not excepted from the Policy. They also argue that regardless of the risk's coverage, Old Republic breached its duty to defend them because the duty to defend is broader than the duty to indemnify.

Old Republic replied[16] that BVJ and BVL did not assert facts that show Old Republic's obligation to indemnify or defend Plaintiffs from the alleged risk.

---

[12] *Id*. ¶ 58, and attached Ex. E.

[13] *Id*. ¶¶ 62, 63.

[14] Motion at 14; Old Republic National Title Insurance Company's Reply Memorandum in Support of Motion for Judgment on the Pleadings (Reply) at 14, docket no. 22, filed March 20, 2015.

[15] Plaintiffs' Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings (Opposition), docket no. 19, filed February 23, 2015.

[16] Reply at 2.

JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW ............................................. 4
DISCUSSION ............................................................................................................................. 4
      Title Insurance Policy Does Not Cover the Improvement Assessment Levied  After
            the Date of the Policy......................................................................................... 5
            Creation of a Special Improvement District Does Not Create an  Improvement
                Assessment on the Property ................................................................... 5
            An Improvement Assessment Levied After the Date of the Policy Does Not
                Constitute a  Defect, Lien, or Encumbrance on the Title to the Insured
                Property ................................................................................................. 6
            Construction on the Insured Property and the Policy Exceptions........................... 9
            Brewer Does Not Apply ...................................................................................... 11
      An Insurer Has No Duty to Defend an Insured against Claims Not Covered by the
            Policy ................................................................................................................. 13
      Good Faith and Fair Dealing May Not Imply a Duty Beyond the Contract.................... 13
ORDER ...................................................................................................................................... 15

## JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[17] The factual details supporting a claim must be sufficient to make the claim plausible, rather than merely possible; i.e., "enough to raise a right to relief above the speculative level . . . ."[18] It must be reasonable for a court to draw the inference that the defendant is liable based on the facts stated.[19] Recitations of elements of a claim and conclusory statements lack sufficient detail, and cannot trigger a court's assumption that all of the statements made in the pleading are true.[20]

## DISCUSSION

The issue presented is whether the intention to create the SID and levy the assessment on the Insured Property; creation of the SID and its recording; construction work on the Insured

---

[17] *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(b)(6).

[18] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

[19] *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[20] *Id*.

Property conducted prior to the Ordinance; or any combination of these events constitute a risk covered by the Policy.

"An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[21] "Whether ambiguity exists in a contract is a question of law."[22] "[W]ords and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests."[23]

"Title insurance, as opposed to other types of insurance, does not insure against future events."[24] Where a party claims that the ambiguity in the insurance contract arises from the exclusions to the policy, the court first determines whether the claims are covered by the policy.[25] If the "claims are not covered by the policy, then the exclusions are not relevant."[26]

### Title Insurance Policy Does Not Cover the Improvement Assessment Levied After the Date of the Policy

#### *Creation of a Special Improvement District Does Not Create an Improvement Assessment on the Property*

Plaintiffs claim that WCC's Creation Resolution created an assessment lien on the Insured Property.[27] They further allege that the assessment lien thus created was senior to the Mortgage, and was not extinguished by BVL's foreclosure on the Insured Property. If this is true,

---

[21] *Alf v. State Farm Fire & Cas. Co.,* 850 P.2d 1272, 1274 (Utah 1993).

[22] *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991).

[23] *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428, 433 (Utah 2006).

[24] *Vestin Mortg., Inc. v. First Am. Title Ins. Co.*, 101 P.3d 398, 402 (Utah Ct. App. 2004), *aff'd*, 139 P.3d 1055 (Utah 2006).

[25] *Id.* at 401.

[26] *Id.*

[27] Complaint ¶ 91.

they say, their loss is covered by the Policy.[28] Plaintiffs' arguments fail for the reasons set forth below.

According to Utah Code Ann. § 11-42-501(1)[29] the "assessment levied . . . constitutes a lien against the property assessed as of the effective date of the assessment resolution or ordinance." Utah Code Ann. §§11-42-201 to -202 requires local entities intending to levy an assessment on property to designate an assessment area, give notice to owners of the property, consider protests, and hold a public hearing.

"Neither the creation of the SID nor the filing of the Notice of Intention creates a lien on real property that affects the title."[30] The SID or notice to levy an assessment on property does not create an encumbrance or defect.[31] Only a resolution or ordinance actually levying the assessment on the property can create a lien.

Old Republic issued the Policy on April 4, 2008. The Ordinance levying the assessment was passed on July 8, 2009, more than a year after the Policy issued. Thus, the Policy did not cover the assessment levied by the Ordinance (the "Assessment Lien") because the lien was created after the date of the Policy.

*An Improvement Assessment Levied After the Date of the Policy Does Not Constitute a Defect, Lien, or Encumbrance on the Title to the Insured Property*

Plaintiffs argue that Covered Risks 2, 5, and 8 of the Policy provide insurance coverage against local entities' recorded intention to *create* the SID and the Assessment Lien,[32] which

---

[28] *Id*. ¶ 91-93.

[29] This provision of the statute became effective on April 30, 2007, after the notice of intention to create the SID on October 19, 2005 and the SID creation on February 15, 2006, but before the Ordinance was issued on July 8, 2009. Prior to April 30, 2007 another provision, regulating the matter substantially in the same manner, was in force. (*See* Utah Code Ann. § 17A–3–304(3)(b) (1999)).

[30] *Vestin Mortg., Inc. v. First Am. Title Ins. Co.*, 139 P.3d 1055, 1057 (Utah 2006).

[31] *Id*.

[32] Opposition at 24-26, 28-31.

distinguishes this case from the *Vestin* case relied on by Old Republic. In *Vestin*, a city adopted a resolution that created a special improvement district. The title insurance on the real property was issued after the creation of a special improvement district, but before the resolution levying the assessment. In its decision affirmed by the Utah Supreme Court, the Utah Court of Appeals found that the creation of a special improvement district with intention to levy an assessment for the improvements on the property does not affect the title to real property.[33]

First, Plaintiffs argue that Covered Risk 2 of the Policy contains "broad and more specific language" than in the title insurance policy in *Vestin*. Covered Risk 2 of the Policy, although it contains language not found in *Vestin*, is not broader than the similar provision of the title insurance policy in *Vestin*.

In *Vestin*, Covered Risk 2 of the insurance policy provided coverage for "[a]ny defect in or lien or encumbrance on the Title."[34] Here, in addition to the language in the insurance policy in *Vestin*, this Policy contains the following provision: "This Covered Risk includes but is not limited to insurance against loss from (a) A defect in the Title . . . ; (b) The lien of real estate taxes or assessments imposed on the Title . . . ; (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title . . . ."[35] The provision in this Policy is not any more broad than the similar provision in *Vestin*. The additional language does not broaden, but only provides non-exclusive examples of covered risks. Plaintiffs' attempt to distinguish *Vestin* from this case based on the additional language in Covered Risk 2 of the Policy fails.

Second, Plaintiffs argue that *Vestin* is also distinguishable from this case because Covered Risk 5 of the Policy provides insurance against subdivision of land, which was not an

---

[33] *Vestin Mortg.*, 101 P.3d at 403 (Utah Ct. App. 2004).

[34] Policy of Title Insurance, attached as Ex. F to Opposition.

[35] Loan Policy of Title Insurance (Policy) at 1, attached as Ex. C to Opposition.

issue in *Vestin*.[36] Plaintiffs did not raise the subdivision issue in the Complaint, and raise it for

the first time in their Opposition. *Vestin* is applicable to this case because it establishes that

regardless of any potential subdivision issues the insurance policy covers risks arising from the

improvement assessment. According to Covered Risk 5 (c) of the Policy, Old Republic insured

Plaintiffs against

> the violation or enforcement of any law, ordinance, permit, or governmental
> regulation  . . .  relating to: . . . (c) the subdivision of land . . . . If a notice,
> describing any part of the Land, is recorded in the Public Records setting forth the
> violation or intention to enforce . . . .[37]

Plaintiffs argue that the Creation Resolution and the notice of intention to levy

assessment on the Insured Property triggered protection against violation or enforcement of law

relating to the subdivision.[38] This argument fails because neither the Creation Resolution nor the

notice of intention to levy assessment on the Insured Property constitutes a recording of a

violation or enforcement of law related to the subdivision of land.

Plaintiffs further allege that in their state litigation with JSSD,[39] JSSD argued that the

Insured Property was illegally subdivided.[40] However, the issue JSSD argued before the state

court was the amount of the assessment on the property and did not relate to the coverage under

the Policy. Because Plaintiffs did not seek indemnity from Old Republic for any losses or

damages incurred due to illegal subdivision of land and because there is no evidence of a

recorded "violation or enforcement of any law, ordinance, permit or governmental regulation"

against the Insured Property, Covered Risk 5 was not triggered.

---

[36] *Vestin Mortg.*, 101 P.3d at 401-02 (Utah Ct. App. 2004).

[37] Policy at 1, attached as Ex. C to Opposition.

[38] Opposition at 24-26.

[39] *See BV Lending, LLC v. Jordanelle Special Serv. Dist.*, Case No. 100500444 (Utah Fourth Dist., Heber, Wasatch Cty.).

[40] Opposition at 26.

Third, Plaintiffs argue that Covered Risk 8 of the Policy provides insurance coverage against "[a]ny taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge."[41] Plaintiffs assert that because this provision on protection against governmental takings was not at issue in *Vestin*, but was at issue in litigation between Plaintiffs and JSSD, *Vestin* does not apply to this case.[42] *Vestin* does apply to this case because taking is not the basis for claims under the Policy in this case as it was not in *Vestin.*

Also, Plaintiffs' complaint does not assert Old Republic's failure to indemnify under Covered Risk 8 of the Policy. The provision of Covered Risk 8 covers only governmental takings that have occurred as of the date of the Policy. Because Plaintiffs do not allege that as of the date of the Policy a taking of the Insured Property occurred, or that they claimed and were denied the coverage provided for in Covered Risk 8 of the Policy, this argument fails.

*Construction on the Insured Property and the Policy Exceptions*

Plaintiffs argue that because of the "the superiority of the assessment lien that stemmed from the construction of the improvements that had begun prior to the issuance of the Old Republic Policy, Old Republic is responsible for BV's losses . . . ."[43] The Complaint alleges that construction on the Insured Property that was underway before the Ordinance was passed and the Policy was issued.[44] Plaintiffs also argue that Old Republic's failure to list the Creation Resolution in the exceptions from coverage shows that the Creation Resolution is not excluded from, and therefore is included in, Policy coverage.[45] In their opposition memorandum, Plaintiffs

---

[41] Policy at 2, attached as Ex. C to Opposition.

[42] Opposition at 30, 31.

[43] *Id.* at 28.

[44] Complaint ¶ 67.

[45] *Id*. ¶¶ 29, 30; Opposition at 43, 44.

argue that they have coverage under Covered Risk 11 and Schedule B-1 of the Policy.[46] The

Policy provides that it is effective "as of Date of Policy and, to the extent stated in Covered Risks

11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of

Insurance . . . ."[47] Risk 11 of the Policy insures BVL for

> [t]he lack of priority of the lien of the Insured Mortgage upon the Title (a) as
> security for each and every advance of proceeds of the loan secured over statutory
> lien for services, labor, or material arising from a construction of an improvement
> or work related to the Land . . . .[48]

An improvement district lien is not a "statutory lien for services, labor, or material arising

from a construction of an improvement or work . . . ."[49] The lien arises under authority of statute

but only on a detailed course of action by the JSSD. An assessment lien is not a statutory lien.

> Title insurance loan policies today also insure against loss caused by
> certain mechanic's liens and materialmen's liens being given priority over the
> insured mortgage lien. The mechanic's liens and materialmen's liens covered are:
> (1) those arising from an improvement or work related to the land which was
> contracted for or commenced before the day of the policy, and (2) those arising
> from an improvement or work related to the land which was contracted for or
> commenced after the policy date, but which was financed by proceeds of the
> indebtedness secured by the insured mortgage that the insured had advanced or
> was obligated to advance at the policy date . . . . This insurance clause does not
> . . . cover municipal liens for special assessments for other public works.[50]

The risk covered by subparagraph (a) does not apply.

Even assuming that the purported construction created an assessment lien on the Insured

Property and is within the Covered Risks defined in the Policy, Schedule B-1 expressly provides

that the Policy does not cover assessments levied on the Insured Property merely because it is

---

[46] Opposition at 27, 42.

[47] Policy at 2, attached as Ex. C to Opposition.

[48] *Id.*

[49] *Id.*

[50] 1 Joyce D. Palomar, Title Ins. Law § 5:16 (2014-2015 ed.). *See also Cole v. Home Title Guar. Co.*, 285 N.Y.S.2d 914, 915 (N.Y. App. Div. 1967) ("[A]ny other determination would be inconsistent with the concept of assessments as distinguished from mechanics' liens and would impose a risk which the title company . . . did not assume.) *aff'd*, 296 N.Y.S.2d 760 (N.Y. 1968).

located within the boundaries of WCC or JSSD[51]. Specifically, the Policy states that it "does not insure against loss or damage . . . costs . . . or expenses that arise by reason of: [Insured Property] lies within the boundaries of Wasatch County . . . , Jordanelle Special Service District, and is subject to any and all charges and assessment thereof."[52]

Plaintiffs further argue that Old Republic's failure to list the Creation Resolution in Schedule B-1 of the Policy proves that the Creation Resolution is a risk covered by the Policy.[53] This argument fails because the exceptions to the Policy cannot expand the risks covered by the Policy. Subject to certain exceptions, the Policy protects the insured against the liens created as of the date of the Policy and listed in the Policy. The Policy does not cover the Assessment Lien because that lien did not exist as of the date of the Policy. Consequently, Old Republic was not obligated to indemnify Plaintiffs for any losses and damages Plaintiffs incurred because of the Assessment Lien or Creation Resolution.

<em>Brewer Does Not Apply</em>

Plaintiffs claim that *Brewer v. Peatross*[54] supports the position that the encumbrance on the Insured Property was created before the Ordinance and Policy were issued.[55] Plaintiffs argue that this case should be resolved consistently with *Brewer*.[56] This argument is without merit.

*Brewer* was a dispute over a warranty deed, not an insurance contract. In *Brewer*, defendant transferred land to plaintiff by a warranty deed and falsely represented to plaintiff that the purchase price of the land included the cost of the improvements under way. The defendant

---

[51] Complaint Ex. B, Schedule B-1 ¶ 3.

[52] *Id*.

[53] Complaint ¶¶ 29, 30; Opposition at 43, 44.

[54] *Brewer v. Peatross*, 595 P.2d 866 (Utah 1979).

[55] Opposition at 37-39.

[56] *Id.* at 39, 40.

affirmatively assured plaintiff that plaintiff would not have any future obligations in connection with the improvements. The court in *Brewer* specifically stated that it saw "no reason to disagree with the argument . . . that the mere existence of . . . an improvement district does not necessarily constitute an encumbrance."[57]

The court in *Brewer* stated that

[i]n order to [constitute an encumbrance], [an improvement] district must have progressed to the point that the fact that there is some burden upon the property is either discoverable from the record, or the circumstances are such that the grantor either had or should have had knowledge that there was such a burden.[58]

The reason the court in *Brewer* held the defendant responsible for the cost of the construction is

that when the deeds were executed, the defendants had actual knowledge of the existence and purpose of the improvement district; that they were aware that the improvements were in various stages of completion; and that the costs being incurred were to be assessed against the properties in question. Moreover, there was evidence that when plaintiff purchasers inquired as to whether the purchase price of the lots included the improvements, they were assured that it did.[59]

*Brewer* is inapplicable to this case because the issue in *Brewer* was the breach of warranty in the deed compounded by seller's misrepresentation of the buyer's obligations after the transfer of the land, not the effective date of a lien created by an improvement assessment that triggers an insured risk. Moreover, WCC, as shown in Plaintiffs' Exhibit E to the Complaint, stated in multiple notices that the Assessment Lien arises out of the Ordinance. It follows that the Assessment Lien was levied after the date of the Policy and therefore it is not covered by the Policy.

---

[57] *Brewer*, 595 P.2d at 868.

[58] *Id*.

[59] *Id*.

**An Insurer Has No Duty to Defend an Insured against Claims Not Covered by the Policy**

Plaintiffs claim that in addition to the obligation to indemnify, Old Republic has a broad duty to defend Plaintiffs against claims related to the Assessment Lien. Plaintiffs argue that the duty to defend is broader than the duty to indemnify and arises "when the insurer ascertains facts giving rise to potential liability under the insurance policy."[60] Plaintiffs incorrectly emphasize the "potential liability" portion of this statement. Instead, the focus should be on "when insurer ascertains facts giving rise . . . ."

The Policy unambiguously states in Covered Risk 14 that Old Republic will be responsible for "the costs, attorney's fees, and expenses incurred in defense of any matter insured against by this Policy . . . ."[61] The "matter" claimed by Plaintiffs – the matter from which their claimed loss arises – is the purported lien created by the Creation Resolution, which is not covered by the Policy because it does not constitute an event that triggers insurance coverage. Similarly, the Assessment Lien was not covered by the Policy because it was created after the Policy was issued. Consequently, Plaintiffs' claim to Old Republic for coverage did not assert "facts giving rise" to Plaintiffs' liability under the Policy. Thus, Old Republic was not obligated to defend Plaintiffs in connection with the Assessment Lien and Plaintiffs' second cause of action claim fails.

**Good Faith and Fair Dealing May Not Imply a Duty Beyond the Contract**

Plaintiffs claim that Old Republic breached the implied covenant of good faith and fair dealing. Neither the Complaint, nor the opposition to the Motion states which actions or inactions Plaintiffs allege to constitute the breach. Plaintiffs did not support this assertion with factual allegations or supporting legal authority.

---

[60] *Sharon Steel Corp. v. Aetna Cas. & Sur.*, 931 P.2d 127, 133 (Utah 1997).

[61] Policy at 2, attached as Ex. C to Opposition.

The implied covenant of good faith and fair dealing is a contract claim.[62] Under this covenant, "each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract."[63] The covenant cannot be read to establish independent rights or duties not agreed by the parties.[64] The covenant cannot create rights and duties inconsistent with express contractual provisions.[65] The covenant cannot compel a party to act "to its own detriment for the purpose of benefitting another party to the contract."[66] A court will not interpret the covenant in a way that is "inconsistent with the express terms of the applicable contract."[67]

A court may find that the parties are bound by an affirmative implied covenant "where it is clear" either "from the parties' 'course of dealings' or a settled custom or usage of trade that the parties undoubtedly would have agreed to the covenant if they had considered and addressed it."[68] But, "[n]o such covenant may be invoked . . . if it would create obligations 'inconsistent with express contractual terms.'"[69]

Here, Old Republic agreed to insure Plaintiffs, with certain exceptions, against risks covered by the Policy as of the date of the Policy. There is no indication that any of Old Republic's actions prevented Plaintiffs from receiving the agreed fruits of the insurance contract. Title insurance contracts protect from existing defects of the title as of the date of the insurance policy. Holding Old Republic responsible for an assessment created after the date of the policy

---

[62] *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 800 (Utah 1985).

[63] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991).

[64] *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004).

[65] *Id.*

[66] *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 457 (Utah Ct. App. 1994).

[67] *Oakwood*, 104 P.3d at 1240.

[68] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011).

[69] *Id.*

would give Plaintiffs rights not provided for in the contract, contradict the express terms of the

contract, and compel Old Republic to involuntarily benefit Plaintiffs to its own detriment.

Plaintiffs' claim as to Old Republic's breach of the implied covenant of good faith and fair

dealing is without merit.

**ORDER**

IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings[70] is

GRANTED and Plaintiffs' Complaint is DISMISSED with prejudice.  The clerk is directed to

close this case.

Dated August 5, 2015.

BY THE COURT

David Nuffer
United States District Judge

---

[70] Old Republic National Title Insurance Company's Motion for Judgment on the Pleadings and Memorandum in Support (Motion), docket no. 15, filed January 8, 2015